UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

NANCY SMITH-COURNYER,

          Plaintiff,

v.                                                               Case No.  5:09-cv-223-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social Security,

          Defendant.
_____/

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Supplemental Security Income. (Doc. 1.) The Commissioner has answered (Doc. 10), and both parties have filed briefs outlining their respective positions. (Docs. 21 & 22.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income in June 2002, alleging a disability onset date of June 15, 1998. (R. 64-69.) Plaintiff's application was denied initially and upon reconsideration. (R. 47-51, 53-56.) On March 28, 2005, after conducting a hearing (R. 578-612), an administrative law judge issued a decision finding Plaintiff not disabled. (R. 324-29.)  Upon Plaintiff's request for review, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings. (R. 334-37.)  The ALJ conducted a supplemental hearing on September 11, 2007. (R. 613-65.) The ALJ issued a decision unfavorable to Plaintiff on October

25, 2007. (R. 15-26.)  The Appeals Council subsequently denied Plaintiff's request for review (R. 6-8) and Plaintiff filed this action. (Doc. 1.)

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla in that the evidence must do more than merely "create a suspicion of the existence of [a] fact," and must include "such relevant evidence as a reasonable person would accept as adequate to support the conclusion."[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with

---

[1] *See* 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Richardson v. Perales, 402 U.S. 389, 401(1971); Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); *accord* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding court must scrutinize entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding court must also consider evidence detracting from evidence on which Commissioner relied).

sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations, he is disabled.[11] Fourth, if a claimant's impairments do

---

[5] Keeton v. Dep't Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. See Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] Id. § 404.1520(c).

[11] Id. § 404.1520(d).

not prevent him from doing past relevant work, he is not disabled.[12] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of

---

[12] Id. § 404.1520(e).

[13] Id. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).
In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.
Id. (internal citations omitted).

[16] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). Once the burden shifts to the Commissioner to show that the claimant can perform other work, the grids may come into play. Id.

4

exertion.[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as the ALJ introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was forty-five (45) years old at the time she filed her SSI application. (R. 65.) She has a high school education and attended cosmetology school. (R. 617.) She has previous work experience as a small products repairer/assembler. (R. 24.)

Although Plaintiff alleged a disability onset date of June 15, 1998 (R. 65), she becomes eligible for SSI in the first month where she is both disabled and has an SSI

---

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] See Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996).

[21] See Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

5

application on file.[22]   As such, because Plaintiff applied for SSI payments on June 19, 2002, her SSI appeal requires a showing of disability between that date and the date of the ALJ's decision on October 25, 2007.

In the ALJ's review of the record, including Plaintiff's testimony, medical records from several health care providers, and testimony from a vocational expert ("VE"), the ALJ determined that Plaintiff suffers from hepatitis C, chronic obstructive pulmonary disorder, history of hypothyroidism with chronic pancreatitis, hypertension without end organ damage and, as of May 2005, non-insulin dependent diabetes mellitus without complications. (R. 18-20.) While these impairments are severe, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations. (R. 20.)

The ALJ then found that Plaintiff retained the RFC to perform up to light levels of work avoiding concentrated exposure to noxious dusts, fumes, gases, and other noxious pollutants and avoiding working in poorly ventilated areas. (R. 20-24.) The ALJ found that Plaintiff could not perform her past relevant work.  Then, relying on the testimony of the VE, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (R. 24.)  Accordingly, the ALJ found that Plaintiff was not disabled.

---

[22] 20 C.F.R. §§416.202(g), 416.203(a), 416.501 (2009); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005.)

Plaintiff raises three issues on appeal, all of which turn on whether the ALJ properly evaluated Plaintiff's claimed urinary incontinence and frequency. As such, the Court will limit its discussion of the record evidence to that impairment.

In January 2002, Plaintiff had bladder surgery for treatment of cystocele with urinary incontinence. (R. 395-403, 647.) On April 28, 2003, Plaintiff was seen by urologist, Mahesh Patel, M.D. (R. 484.) Dr. Patel noted that Plaintiff had a history of stress incontinence for eight months. Plaintiff reported that since surgery she had no control of her urine, the symptoms were getting worse and she had to wear a pad in order to stay dry. Plaintiff's physical examination was unremarkable. On May 12, 2003, Plaintiff returned for cystoscopy, urodynamic study and Marshall Test,[23] all of which showed no incontinence. (R. 484.) On June 30, 2003, Dr. Patel noted that Plaintiff had a good response to Ditropan and that she did "not have much incontinence." (R. 483.)

More than three years later, on July 12, 2006, Plaintiff returned to Dr. Patel who noted that Plaintiff had a history of frequency of urination and at times incontinence. (R. 482.) He noted that in the past Plaintiff had taken Ditropan which had worked well for her. On July 31, 2006, Plaintiff reported that Ditropan was not helping her and Dr. Patel started her on Vesicare. (R. 482.) On September 27, 2006, Plaintiff returned and reported that Vesicare did not help her; Dr. Patel gave her Sanctura. (R. 481.) On March 5, 2007, Plaintiff reported that whenever she coughs and sneezes she has spontaneous leakage of urine and Sanctura did not help her. (R. 517.) Dr. Patel gave

---

[23] The Marshall test for stress incontinence is a test performed by filling the bladder at least half way with fluid and having the patient bear down or cough. Organized Wisdom (visited September 22, 2010.) <http://organizedwisdom.com/Marshall_Test_for_Stress_Incontinence>.

her Enablex. On April 4, 2007, Dr. Patel noted that cystoscopy showed no evidence of "patulous vesicourethral angle" and the Marshall test was negative for incontinence. (R. 517.) Dr. Patel gave her an Oxytrol patch. On May 4, 2007, Plaintiff reported that she had some response to Oxytrol for incontinence, and Dr. Patel gave her more. (R. 516.)

At the supplemental hearing, Plaintiff testified that she has to go to the restroom one hundred times per day to urinate. (R. 623.) At the time of the hearing (almost 4:00 p.m.), Plaintiff testified that she had already gone to the restroom 15 times that day; but that she had tried not to drink too much and she had her Oxytrol patch on. Plaintiff explained that for the past several years she had been going to the restroom to urinate two or three times an hour. (R. 624.) Plaintiff stated that with the Oxytrol patch she does not get the urge to urinate as often but she still goes at least two times an hour. Plaintiff reported using a pad, sometimes two or three pads a day. (R. 625.) Plaintiff testified that taking diuretics increases the frequency with which she has to use the restroom but that if she does not take the diuretics her blood pressure goes up. (R. 647-48.) While the ALJ was questioning the VE, Plaintiff asked if she could go to the restroom and the ALJ asked her to wait. (R. 661.)

## IV. **DISCUSSION**

On appeal, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's alleged urinary incontinence and frequency throughout the sequential analysis. First, Plaintiff contends that the ALJ failing to specifically identify Plaintiff's urinary incontinence and frequency as a "severe" impairment at step two of the sequential analysis. Next, Plaintiff contends that the ALJ failed to properly evaluate Plaintiff's subjective complaints of urinary urgency and frequency. Finally, Plaintiff contends that

8

the ALJ committed reversible error at step five of the sequential analysis by relying upon VE testimony that was based upon hypothetical questions that did not incorporate all of the limitations resulting from the combined effects of all of Plaintiff's impairments, including urinary urgency and frequency.

First, Plaintiff argues that the ALJ committed legal error by failing to identify Plaintiff's urinary incontinence and frequency as a "severe" impairment at step two of the sequential analysis. At the second step, the ALJ must "consider the medical severity of [the claimant's] impairments."[24] In doing so, the ALJ must determine whether the impairments, alone or in combination, "significantly limit" the claimant's "physical or mental ability to do basic work skills."[25] Objective medical evidence must confirm that the impairment is severe." However, a diagnosis is insufficient; instead, Plaintiff must show the effect of the impairment on her ability to work.[26]

The ALJ discussed at step two all of the record medical evidence regarding Plaintiff's alleged urinary incontinence. However, aside from Plaintiff's descriptions of the alleged effects of this impairment, Plaintiff has offered no other evidence showing how her urinary incontinence is severe or functionally limiting. While Dr. Patel recorded Plaintiff's complaints of incontinence, his notes do not establish the presence of any functional limitations caused by the condition. Nor is Dr. Patel's April 2003 statement that Plaintiff has had stress incontinence for 8 months and no control of her urine

---

[24] Wind v. Barnhart, 133 Fed.Appx. 684, 690 (11th Cir. 2005)(quoting Phillips v. Barnhart, 357 F.3d. 1232, 1237 (11th Cir. 2004).

[25] Id.

[26] Id.

sufficient to establish that Plaintiff's urinary incontinence is a severe impairment. This statement was made following Plaintiff's initial appointment with Dr. Patel, and was likely a recitation of Plaintiff's complaints, and it is not supported by Dr. Patel's testing – all of which showed no incontinence.

However, even if the ALJ erred in failing to include urinary incontinence and frequency as a "severe" impairment, that error would have been harmless because the ALJ did not stop his analysis at step two of the sequential analysis. "[T]he ALJ could not have committed any error at step two because he found that [Plaintiff] had a severe impairment . . . and moved on to the next step in the evaluation, which is all that is required at step two."[27] However, because the ALJ found three impairments to be severe – i.e., right arm amputation, formerly the dominant extremity; post-traumatic stress disorder; and an adjustment disorder – and proceeded to step three of the sequential analysis, the ALJ's analysis at step two does not constitute reversible error.[28] Therefore, the ALJ did not commit reversible error at step two of the sequential analysis because the ALJ concluded that Plaintiff has several "severe" impairments and proceeded to step three.

Next, Plaintiff argues that the ALJ failed to properly consider Plaintiff's reports of disabling urinary incontinence. When a claimant attempts to establish a disability through her own testimony of pain or other subjective symptoms, she must show evidence of an underlying medical condition and must demonstrate either that objective

---

[27] Council v. Barnhart, 127 Fed. Appx. 473, No. 04-13128, slip op. at 4 (11th Cir. Dec. 28, 2004) (table); see also Perry v. Astrue, 280 Fed. Appx. 887 (11th Cir. 2008).

[28] Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

medical evidence confirms the severity of the alleged symptom arising from that condition or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged symptoms.[29] If the ALJ determines the claimant has such a condition, the ALJ must evaluate the intensity and persistence of the alleged symptoms and determine how they limit the claimant's capacity for work.[30]  During this evaluation, the ALJ must consider the claimant's testimony regarding his or her symptoms, including any inconsistencies between the testimony and the other evidence.[31]

If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[32]  While an adequate credibility finding need not cite "particular phrases or formulations [...] broad findings that a claimant lacked credibility and could return to her past work alone are not enough to enable a court to conclude that the ALJ considered her medical condition as a whole."[33]

Here, in applying the pain standard, the ALJ found that Plaintiff met the initial burden of showing underlying medical conditions that could be expected to give rise to symptoms. Once Plaintiff met this initial burden, however, the ALJ found Plaintiff's

---

[29] Foote, 67 F.3d at 1560.

[30] 20 C.F.R. §416.929(c).

[31] Id.

[32] Foote, 67 F.3d at 1561-62; Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[33] Foote at 1562-1563.

subjective complaints were not fully credible considering the objective medical evidence, which showed no evidence of incontinence; (2) Plaintiff's intermittent treatment for her condition; (3) Plaintiff's failure to report this condition to many of her medical sources; and (4) Plaintiff's demeanor at the hearing. (R. 22-23.)

The ALJ correctly found that Plaintiff's claims of severe urinary incontinence were inconsistent with the objective medical evidence. (R. 19, 23.) On April 28, 2003, while Dr. Patel noted Plaintiff's claims of incontinence for eight months and "no control of her urine" since surgery in January 2002, Plaintiff's physical examination was unremarkable. (R. 520.) On May 12, 2003, Dr. Patel conducted a cystoscopy which he described as "unremarkable," an urodynamic study which "show[ed] no stress incontinence" and a Marshall Test which was negative for incontinence. (R. 520.) On April 4, 2007, Dr. Patel again noted that a cystoscopy showed no evidence of "patulous vesicourethral angle" and a Marshall test was negative for incontinence. (R. 517.) The lack of objective evidence supporting Plaintiff's allegations of disabling urinary incontinence supports the ALJ's credibility finding.

The ALJ also noted that Plaintiff's claims of constant disabling urinary incontinence were not entirely credible based on her lack of treatment, noting that her "three year break in treatment indicates that her condition was not as limiting as she alleges." (R. 23.) A claimant's failure to seek medical treatment is relevant in assessing credibility.[34] After her initial three appointments with Dr. Patel in 2003 (R. 519-20), Plaintiff waited more than three years before seeking treatment from him in

---

[34] Sheldon v. Astrue, 268 Fed. Appx. 871, 872 (11th Cir. 2008)(citing Watson v. Heckler, 738 F.2d 1169, 1173 (11th Cir. 1984.)

July 2007. (R. 518.) After another three appointments, Plaintiff did not return to Dr. Patel for more than five months. (R. 517-18.) The lack of treatment during these lengthy time periods belies Plaintiff's claims of disability urinary incontinence.

As the ALJ noted, Plaintiff's claims of constant, disabling urinary incontinence were also inconsistent with her medical history as she rarely reported this condition to her medical sources. (R. 23.) Despite Plaintiff's testimony that her urinary incontinence was both constant and longstanding, requiring her to use the restroom two or three times an hour for "years now" (R. 624), there is no mention of this condition in records from several of Plaintiff's other medical sources. (R. 135, 405-06, 410, 457, 506.)

Finally, the ALJ also properly considered Plaintiff's demeanor at the hearing. As the ALJ noted, Plaintiff's claims of urinary incontinence, including her testimony that she needs to got to bathroom "probably five times" in two hours (R. 605) and about a "hundred times a day" (R. 623), appeared inconsistent with her ability to "remain[ ] sitting during the approximate one-and-a-half hour hearing without any significant difficulty observed from a lay perspective." (R. 22.) Although Plaintiff requested during the hearing that she be allowed to go to the restroom (R. 661), the ALJ noted that she was able to wait until the end and "did not need to stop the hearing to use the bathroom." (R. 22.)

Accordingly, the ALJ articulated several reasons to support his conclusion that Plaintiff's claims of constant, disabling urinary incontinence were not entirely credible, and those reasons are supported by substantial evidence. While Plaintiff claims that

some evidence supports her allegations of functional limitations, substantial evidence, nonetheless, supports the ALJ's finding that her claims were not entirely credible.[35]

Finally, Plaintiff argues that the ALJ erred by posing an incomplete hypothetical question to the VE that did not include Plaintiff's urinary incontinence. While the hypothetical question must include all of the claimant's limitations,[36] an ALJ is not required to include findings in the hypothetical that he properly finds are unsupported.[37] Nor is an ALJ required to include in the hypothetical each and every symptom of the claimant.[38]

Here, the ALJ's hypothetical question to the VE included all of the restrictions accepted as credible by the ALJ and included in the RFC. The ALJ was not required to include limitations caused by Plaintiff's urinary incontinence in the hypothetical because, as discussed above, the ALJ properly determined Plaintiff's claims regarding urinary incontinence were not credible – and Plaintiff failed to show that her urinary incontinence caused any limitations beyond those set out in the RFC assessment. Accordingly, the ALJ properly excluded Plaintiff's alleged urinary incontinence from the hypothetical to the VE.

---

[35] *See* Moore v. Barnhart, 405 F.3d 1208, 1213 (11th Cir. 2005)("[t]o the extent that [Plaintiff] points to other evidence which would undermine the ALJ's . . . determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence' . . . ")(footnote and internal quotations omitted).

[36] Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002.)

[37] Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004.)

[38] Ingram v. Commissioner of Social Security, 496 F.3d 1253, 1270 (11th Cir. 2007.)

## V. CONCLUSION

In view of the foregoing, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter final judgment in favor of the Commissioner consistent with this Order and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on September 23, 2010.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel